IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

THE HISTORIC GREEN SPRINGS, INC., ET AL.,
*Plaintiffs*,

v.

LOUISA COUNTY WATER AUTHORITY,
*Defendant*.

CIVIL ACTION NO. 3:09-CV-00079

MEMORANDUM OPINION

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Plaintiffs amended their original complaint, alleging numerous violations of the Clean Water Act, the Virginia State Water Control Law, and Defendant's Virginia Pollution Discharge Elimination System permit, issued by the Virginia Department of Environmental Quality. The matter is now before the court upon consideration of Defendant's motion to dismiss, which has been fully briefed and argued.

Defendant asserts that the amended complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for its failure to state, on its face, the statutory prerequisites that would entitle Plaintiffs to relief under the Clean Water Act (the "CWA," or the "Act"). In Defendant's view, Plaintiffs have failed to comply with the notice and delay requirements of citizen enforcement actions under the Act, and therefore their claims are barred. Additionally, Defendant contends that claims asserted by the Historic Green Springs, Inc. ("HGSI") should be dismissed pursuant to Rule 12(b)(1) because HGSI has not alleged a sufficiently particularized injury-in-fact.

As stated herein, I find that HGSI has standing to proceed as a Plaintiff in this suit, and I will deny Defendant's motion to dismiss pursuant to Rule 12(b)(1). Nonetheless, because

Plaintiffs failed to provide the required 60-day notice for all the violations alleged in the amended complaint, the motion to dismiss pursuant to Rule 12(b)(6) will be granted; however, rather than striking the complaint from the court's active docket, I will allow ten days' leave for Plaintiffs to file a motion for leave to file a second amended complaint.

## I. Factual Background

The crux of the original and amended complaints is that Defendant's Zion Crossroads Wastewater Treatment Plant discharges pollution, in the form of treated sewage wastewater, into Camp Creek, a tributary of the South Anna River and the Chesapeake Bay, about 400 yards upstream from Aspen Hill Farm, the home of Plaintiffs Mr. and Mrs. Murphy. Plaintiff HGSI asserts its claims in this matter based on its status as the holder of a conservation easement on Aspen Hill Farm.[1] Plaintiffs state that Defendant's discharge of treated wastewater adversely impacts and injures Mr. and Mrs. Murphy's use of Camp Creek "for wildlife and livestock watering, as well as for recreational and aesthetic uses." "In particular," Plaintiffs allege, "the water is no longer fit for watering cattle, so that this important agricultural use is impaired" by "Defendant's discharges."

On September 18, 2009, Plaintiffs sent a "Notice Letter" to the Administrator of the U.S. Environmental Protection Agency ("EPA"), to the Virginia Department of Environmental Quality ("VDEQ"), and to Defendant, of Plaintiffs' intent to file a citizen enforcement action

[1] The amended complaint states, in pertinent part, that "protecting water quality in Camp Creek is a core duty in [HGSI's] overall purpose of preserving and protecting the properties that comprise the District, which it accomplishes through the use of conservation easements that, among other things, protect the riparian rights and beneficial uses of Camp Creek." The complaint asserts that HGSI "has a duty to protect and enforce" its easement, including the protection of Mr. and Mrs. Murphy's riparian property rights, but HGSI otherwise asserts no specific rights in the property beyond its easement. With Plaintiffs' memorandum in opposition to the motion to dismiss, Plaintiffs submitted two declarations (from HGSI's president and a member of its board of directors) and copies of two land conservation easements that HGSI holds on the Murphys' land.

under Section 505 of the Clean Water Act, 33 U.S.C. § 1365. Plaintiffs alleged that Defendant had committed numerous violations of the CWA, the Virginia State Water Control Law, and Defendant's VDEQ-issued Virginia Pollutant Discharge Elimination System ("VPDES") permit. The Notice Letter included a list of specific violations upon which Plaintiffs intended to bring suit. On November 30, 2009, Plaintiffs filed their original complaint in this court. The original complaint alleged the violations listed in the Notice Letter, including alleged violations of the mass and concentration limits and monitoring and reporting requirements in the Zion Crossroads VPDES permit for the period July 2003 through November 2009; a copy of the Notice Letter, with the list of specific violations, was attached to the complaint as an exhibit.

Thereafter, in the course of discovery having conducted a comprehensive review of Defendant's operating records, Plaintiffs filed a motion for leave to amend the original complaint. Plaintiffs asserted that a review of the records revealed additional violations that required "substantial amendment" to their claims. Leave to amend was granted, and Plaintiffs filed their first amended complaint on February 15, 2011.

Plaintiffs' amended complaint added numerous claims to those presented in the original complaint, and the amended complaint was accompanied by an entirely new list of alleged violations, which was attached as Exhibit B to the amended complaint. The amendments add over 400 new alleged violations, summarized as follows: mass and concentration limit excesses reported to VDEQ in corrected Discharge Monitoring Reports ("DMRs") filed during the summer of 2010; allegations of reporting violations, including the alleged erroneous DMRs that were corrected; and alleged violations of the mass and concentration limits and alleged monitoring and reporting violations for the period December 2009 though May 2010.

## II. Failure to State a Claim

Regarding motions to dismiss for failure to state a claim upon which relief may be granted, I apply the pleading standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949.

While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, a court may consider a document attached to a motion to dismiss if "it was integral to and explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); *see also Davis v. George Mason University*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) ("when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.") (citations omitted); *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records,

even when the documents are neither referenced by nor integral to plaintiff's complaint).

Under the Clean Water Act, no citizen may commence a cause of action "prior to sixty days after the plaintiff has given notice of the alleged violation" to the Administrator of the EPA, the state in which the violation occurred, and the alleged violator. 33 U.S.C. § 1365(b)(1)(A). The required notice must be given in "such a manner as the Administrator [of the EPA] shall prescribe by regulation." 33 U.S.C. § 1365(b). The corresponding federal regulation, 40 C.F.R. § 135.3(a), states that the 60-day notice must include information sufficient to allow the alleged violator

> to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the persons or person responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

In *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), the Supreme Court of the United States dealt with the 60-day notice requirement as it applied to citizen suits under the Resource Conservation and Recovery Act of 1976 ("RCRA"). The Court held that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." *Id*. at 31. The Court further held that "a district court may not disregard these requirements at its discretion." *Id*. The Court went on to conclude that, when a citizen suit fails to meet the notice and 60-day delay requirement, "the district court must dismiss the action as barred by the terms of the statute." *Id* at 33.

Recently, in *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387 (4th Cir. 2011) [hereinafter "*Gaston III*"], the United States Court of Appeals for the Fourth Circuit, addressing the 60-day notice requirement as applied to the Clean Water Act, specifically followed the holding in *Hallstrom*. *Gaston III* "conclude[d] that compliance with the notice and

delay provisions of § 1365(b)(1)(A) of the Clean Water Act is a mandatory condition precedent to the commencement of a suit under this Act." 629 F.3d at 399. *Gaston III* concluded further "that compliance with the requirements of 40 C.F.R. § 135.3(a) is a mandatory condition precedent to filing suit under the act." *Id*. (citing *Hallstrom*, 493 U.S. at 31).

The notice and delay requirement serves two important functions under a statutory scheme allowing for citizen enforcement actions. First, requiring that notice be delivered to the government agencies charged with primary responsibility for enforcing the Clean Water Act ensures that these agencies have sufficient opportunity to commence and diligently prosecute their own enforcement actions. This reflects the legislative intent that citizen enforcement actions are "to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). Second, the notice and delay requirement for citizen enforcement suits serves the important purpose of preventing unnecessary litigation. As such, the notice given must be specific and particular as to the alleged violations; indeed, the "[t]he notice given by a citizen plaintiff under the Clean Water Act thus must provide the alleged violator with enough information to attempt to correct the violation and avert the citizen suit." *Gaston III*, 629 F.3d at 400 (citing *Natural Res. Def Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000)). Furthermore, "[t]he notice letter must inform the alleged violator of each violation that will be targeted in the citizen suit. . . ." *Id*. at 399 (citing *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 487-88 (2d Cir. 2001)).

In *Gaston III*, as in the instant case, the plaintiffs sent the defendant a notice letter as required by 33 U.S.C. § 1365(b), accompanied by a list identifying specific violations upon which they intended to bring suit. Subsequently, the plaintiffs filed a citizen enforcement action

and began discovery. After discovery was completed, the plaintiffs filed a motion for summary judgment, alleging numerous additional violations not originally contained in their 60-day notice letter, nor included in their complaint. Judgment was entered for the defendant on a separate standing issue, but the case was appealed and subsequently remanded. On remand, the trial court entered judgment against the defendant for numerous violations, many of which were not included in the plaintiffs' 60-day notice letter. The defendant appealed on several grounds, including that the district court erred in imposing penalties for violations that were not identified in the plaintiffs' notice letter. The Court of Appeals agreed, holding, in part, that the legislative objectives of citizen suits cannot be met "if citizen plaintiffs are excused from providing adequate information in their pre-suit notice to enable the recipients of such notices to identify the specific alleged violations." *Gaston III*, 629 F.3d at 399.

In the instant case, on September 18, 2009, Plaintiffs gave the requisite notice, pursuant to 33 U.S.C. § 1365(b), to the Administrator of the EPA, to the VDEQ, and to Defendant, of specific violations and Plaintiffs' intent to bring suit. Plaintiffs filed their original complaint on November 30, 2009, with which Plaintiffs included a copy of the 60-day Notice Letter and a detailed list of Defendant's alleged violations. This original complaint alleged violations of the mass and concentration limits and monitoring and reporting requirements in the Zion Crossroads VPDES permit for the period of July 2003 through November 2009.

After conducting comprehensive discovery of Defendant's records and personnel, Plaintiffs sought leave to amend their complaint to include an extensive list of additional alleged violations. Plaintiffs' first amended complaint alleges a total of 686 violations of the mass and concentration limits and monitoring and reporting requirements for the period of November 2004 through May 2010. And, in addition to deleting a number of violations alleged in the

original complaint, the first amended complaint adds numerous mass and concentration limits exceedances, reported after the original complaint was filed. The first amended complaint also includes allegations of numerous reporting violations. Although the amended complaint included a copy of the Notice Letter of September 18, 2009, and the original list of alleged violations, it also included, as Exhibit B, an entirely new list of alleged violations, for which no notice had been given. Although the relief requested in the first amended complaint includes alleged violations listed in the Notice Letter of September 18, 2009, it adds over 400 new and additional alleged violations for which no notice has been given.

Thus, Plaintiffs' 60-day Notice Letter was insufficient to support the claims asserted in the amended complaint, because it fails to provide notice, as required by 33 U.S.C. § 1365(b) and the controlling case law. As Plaintiffs stated in support of their motion for leave to amend, the first amended complaint represents a "substantial amendment to the originally filed complaint,"and the new and additional claims "present a completely different picture of Defendant's operations with respect to this Court's consideration of appropriate civil penalties and injunctive relief." *Id*. As such, it is clear that Plaintiffs have failed to provide "adequate information in their pre-suit notice to enable [Defendants] to identify the specific alleged violations." *Gaston III*, 629 F.3d at 399. The fact that Plaintiffs did not originally have access to the information that revealed the additional alleged violations does not alter the analysis. Plaintiffs are required to provide notice as a pre-condition for all claims, even those not discovered until after a suit is commenced. As pointed out by the Fourth Circuit in *Gaston III*, "[t]he plaintiffs' lack of information before their suit was filed cannot excuse the deficiencies in the notice letter, because those deficiencies prevented attainment of the legislative objectives of encouraging pre-suit governmental involvement and securing violator compliance." *Id* at 402

(citing *Hallstrom*, 493 U.S. at 29).

In this case, Plaintiffs have not provided the required 60-day notice for the additional violations alleged in the amended complaint. Because the relief requested by Plaintiffs in their first amended complaint is based on the entirely new list of alleged violations in Exhibit B, which includes the additional alleged violations for which no notice has been given, it fails to comply with the notice and delay provisions of the statute. To find otherwise would be contrary to the precedents set forth in *Hallstrom* and *Gaston III*. Plaintiffs' Notice Letter fails to provide any information at all regarding the newly alleged violations; by Plaintiffs' own admission, the newly alleged violations occurred wither after the date of the Notice Letter or were otherwise unknown to them at the time the Notice Letter was issues. Furthermore, contrary to Plaintiffs' assertions, the Notice Letter does not satisfy the notice requirements simply because it states that more violations may be found subsequently. As *Gaston III* makes amply clear, lack of information prior to filing suit does not excuse Plaintiffs from providing specific allegations in their Notice Letter before proceeding to litigation.[2] 629 F.3d at 402.

Nor can Plaintiffs' failure to provide adequate notice in this case be cured by their citation to *Gaston III*'s reiteration of the principles that a court should not employ an "overly technical application of regulatory requirements," nor require a plaintiff to "list every specific aspect or detail of every alleged violation." *Id*. at 400 (citations omitted). Defendant's motion to dismiss is based on more than a technical application of the regulatory requirements. Indeed, Plaintiffs

[2] At the hearing on the instant motions, counsel for Plaintiffs asserted that "[i]t is enough if the citizens give notice of effluent violations of specific discharge parameters. . . . The Fourth Circuit affirmed this [in *Gaston III*]. A careful reading of the Fourth Circuit decision will show that it held only that entirely unnoticed parameters could not be added after notice." My reading of *Gaston III* discloses no such holding. In fact, counsel's repeated and insistent reference to "parameters" notwithstanding, my review of *Gaston III* reveals no reference whatsoever to"parameters," nor any language that reasonably could lead me to conclude that *Gaston III* "held only that entirely unnoticed parameters could not be added after notice."

cite 40 C.F.R. § 135.3(a), the EPA's regulation governing the content of citizen suit Notice Letters, which shows that the Notice Letter of September 18, 2009, is inadequate to support the instant amended complaint, given that it requires the following: the specific standard, limitation, or order alleged to have been violated; the activity alleged to constitute a violation; the person or persons responsible for the alleged violation; the location of the alleged violation; the date or dates of such violation; and the full name, address, and telephone number of the person giving notice. The Notice Letter does not provide this information for the new allegations. Plaintiffs' contention that the 400 newly alleged violations need not be presented in a Notice Letter is unpersuasive; "[t]he sufficiency of the plaintiffs' notice letter must be assessed based on the facts that existed [at the time of the notice letter], not on facts that developed several months later." *Gaston III*, 629 F.3d at 401. The "legislative objectives" of the statutory notice and delay provisions "cannot be met . . . if citizen plaintiffs are excused from providing adequate information in the pre-suit notice to enable the recipients of such notices to identify the specific alleged violations." *Id*. at 399. Plaintiffs' failure to provide adequate notice before filing the amended complaint clearly conflicts with the purpose of the notice requirement, and the majority of the allegations of the amended complaint constitute an attempt to remedy the alleged violations through a citizen suit rather than through an agency enforcement action or Defendant's voluntary efforts.

Because Plaintiffs failed to comply with the notice and delay requirements of the Clean Water Act, they are barred from the relief sought on the face of the first amended complaint. As such, the first amended complaint fails to state a claim upon which relief may be granted. Accordingly, Defendant's motion to dismiss must be granted. However, I will grant Plaintiffs ten days' leave to amend their complaint to state claims that were properly asserted in the Notice

Letter of September 18, 2009.[3]

## III. Standing

I find that HGSI's allegations are sufficient for it to have standing as a plaintiff in this action. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) [hereinafter "*Defenders of Wildlife*"] (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). A court also must construe the facts at this state in the light most favorable to the Plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 501-502 (1975).

"The Clean Water Act confers standing on any 'person or persons having an interest which is or may be adversely affected.'" *Gaston III*, 629 F.3d at 396 (citing 33 U.S.C. § 1365(a), (g)). "If a plaintiff asserting an interest under the Clean Water Act meets the constitutional standing requirements to satisfy Article III, then that plaintiff satisfies the statutory threshold as well." *Id.* (citation omitted). "An organization may have standing to sue based on an injury to the

[3] I observe that Plaintiffs offer no support for their assertion that I should "sever the unnoticed averments from the pleading and proceed with ruling on the merits of Plaintiffs' claims." Plaintiffs have not and cannot offer any authority to support their proposed "cure" because it is inappropriate under the Federal Rules of Civil Procedure and inconsistent with the controlling case law. The Rules provide no mechanism by which a court can essentially amend a complaint, as Plaintiffs request. And, to cure Plaintiffs' complaint by "severing" the unnoticed averments and proceeding would be contrary to the holding in *Hallstrom*, which held that, "if an action is barred by the terms of a statute, it must be dismissed." *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989). The Court further stated that "[s]uch a remedy [dismissal] for actions filed in violation of [the statute] will further judicial efficiency; courts will have no need to make case-by-case determinations of when or whether failure to fulfill the notice requirement is fatal to a party's suit." *Id.* at 32. Therefore I reject Plaintiffs request that I make a line-by-line determination of which claims and assertions were properly noticed, and which ones were not. However, I will allow ten days within which Plaintiffs may file an amended complaint asserting claims that were properly asserted in the Notice Letter of September 18, 2009.

organization itself or as a representative of its harmed members." *Id*. (citations omitted). Here, I find that HGSI has standing to sue based on its allegations of an injury to the organization itself.[4]

The original and amended complaints allege that HGSI holds a property interest in the Murphys' farm in the form of a conservation easement. HGSI alleged that it has the right to enforce the conservation easement on Camp Creek and that its interests in the protection of Camp Creek are based not only in the holding of property rights to Aspen Hill Farm, but also in the organization's interest in the conservation of Camp Creek. As stated in the amended complaint, "[a]s a land trust organization, HGSI has a duty to protect and enforce such conservation easements, including the protection against any interference with riparian property rights." The amended complaint adds that

> [t]he purpose of HGSI is in part to preserve and protect the properties encompassed by the Green Springs Historic District ("Landmark District"), a unique parcel of 14,000 acres of privately-owned land administered by the U.S. Department of Interior National Park Service. As the name "Green Springs" indicates, protection of water quality of the surface and subsurface waters of the Landmark District is a vital part of HGSI's purpose. Camp Creek, a tributary of the South Anna River and the Chesapeake Bay is a significant surface water feature of the Landmark District's landscape and hydrology. Therefore, protecting water quality in Camp Creek is a core duty in its overall purpose of preserving and protecting the properties that comprise the District, which it accomplishes through the use of conservation easements that, among other things, protect the riparian rights and beneficial uses of Camp Creek.

The amended complaint alleges that the discharges from the Defendant's sewage treatment plant violate the permit, and that the Murphys' riparian rights are interfered with by the pollution in the Creek from the Defendant's treatment plant, adding that "agricultural use" of the waters

---

[4] It is not clear whether Mr. and Mrs. Murphy are "members" of the organization, HGSI. If they are, then the organization's standing is much more readily apparent. "To have representational standing . . . an organization must show that one of its members would have standing to sue in its own right." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 397 ["*Gaston III*"] (4th Cir. 2011) (citations omitted). Mr. and Mrs. Murphy's standing is not a matter of dispute.

“is impaired,” and that, “[i]n particular, the water is no longer fit for watering cattle. . . .” Regarding HGSI itself, the amended complaint states that

> [p]rotection of water quality of the surface and subsurface waters of the Landmark District is a vital part of HGSI’s purpose. Camp Creek . . . is a significant surface water feature of the Landmark District’s landscape and hydrology. Therefore, protecting water quality in Camp Creek is a core duty in its overall purpose of preserving and protecting the properties that properties that comprise the District, which it accomplishes through the use of conservation easements that, among other things, protect the riparian rights and beneficial uses of Camp Creek.

I may properly “presum[e] that general allegations” such as these “embrace those specific facts that are necessary to support the claim.” *Defenders of Wildlife*, 504 U.S. at 561 (citation omitted).

Moreover, injured property rights provide an irrefutable basis for standing. For example, in 2007, the Supreme Court of the United States ruled that claims of the Commonwealth of Massachusetts met the Article III particularized injury requirement finding that “because the Commonwealth ‘owns a substantial portion of the state’s coastal property,’ it has alleged a particularized injury in its capacity as a landowner.” *Massachusetts v. EPA*, 549 U.S. 497, 522 (2007) (internal citations omitted). In *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 n. 3 (1992), Justice Scalia, determining that the plaintiff met Article II standing requirements, noted as follows:

> Lucas properly alleged injury in fact in his complaint. See App. to Pet. for Cert. 154 (complaint); *id*., at 156 (asking “damages for the temporary taking of his property” from the date of the 1988 Act’s passage to “such time as this matter is finally resolved”). No more can reasonably be demanded.

In *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59 (1978), plaintiffs who owned property “nearby” where found to have sufficiently proved injury in fact based on alleged water pollution, following a four-day evidentiary hearing. “Certainly, the environmental and aesthetic

consequences of the thermal pollution of the two lakes in the vicinity of the disputed power plants is the type of harmful effect which has been deemed adequate in prior cases to satisfy the 'injury in fact' standard." *Id*. at 73-74 (1978) (internal citations omitted).

Plaintiff HGSI sets forth further allegations of injury in fact in the declarations filed with its opposition to the motion to dismiss. The declarations of two members of the board of HGSI, one of whom is (or was) its chief operating officer, fully describe the injuries to the organization caused by the pollution of Camp Creek by the Defendant. The deeds of conservation easement are appended to the declaration of Rae Ely ("the President and a founding member of" HGSI, and a landowner and resident within the boundaries of the Green Springs National Historic Landmark District). The second of two conservation easements on the Murphy property expressly carves out a property interest in the protection of a riparian buffer on Camp Creek and conveys to HGSI an enforceable interest in the water quality in Camp Creek.[5] The declaration by Amanda Welch (a member of HGSI's board of directors, the volunteer director of one of HGSI's programs, and also a landowner and resident within the boundaries of the Green Springs National Historic Landmark District) describes a long-term water-quality monitoring project that is a program of HGSI. The program has educational purposes, and Ms. Welch attests to the injury to the educational purposes by the pollution in Camp Creek.[6]

---

[5] At the hearing on the instant motion, Defendant contended that, while this easement "does talk about water quality," "it talks about in the context of the Murphies and specifically their use of the water," and that, regarding HGSI "specifically, . . . it is an easement to protect land use, not water use." However, the easement grants to HGSI quite detailed rights to a riparian buffer and to the use of the water. Paragraph 15 of the easement, subtitled "WELLS; WATER," states that "[t]he drilling of wells or the taking or use of surface or ground water from the Property for any commercial purpose (other than farming on the Property) or for the purpose of serving any use that is not on the Property is prohibited."

[6] I add that, to the extent the motion to dismiss moves for the dismissal of "all claims asserted by Plaintiff The Historic Green Springs, Inc.," there are no claims specific to HGSI over which I would not have

(continued...)

## IV. CONCLUSION

As heretofore explained, I find that HGSI has standing to proceed as a Plaintiff in this suit, and I will deny Defendant's motion to dismiss pursuant to Rule 12(b)(1), but because Plaintiffs failed to provide the required 60-day notice for all the violations alleged in the amended complaint, the motion to dismiss pursuant to Rule 12(b)(6) must be granted. However, rather than striking the complaint from the court's active docket, I will allow ten days' leave for Plaintiffs to file a motion for leave to file a second amended complaint.

An appropriate order accompanies this memorandum opinion.

Entered this 30th day of June, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[6](...continued)
jurisdiction, even if I found that HGSI had insufficiently alleged an injury in fact. All of the Plaintiffs' claims are virtually identical; thus, the standing of one Plaintiff is sufficient to establish a case of controversy under Article III. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (dispensing with the need to consider standing of other plaintiffs because standing of at least one plaintiff was evident); *accord PSINnet, Inc. v. Chapman*, 108 F. Supp. 2d 611, 620 (W.D. Va. 2000). Mr. and Mrs. Murphy are downstream landowners, and as such their "stake in the outcome of this case is sufficiently concrete to warrant the exercise of federal judicial power." *Massachusetts v. EPA*, 549 U.S. at 519 (finding that the Commonwealth of Massachusetts owns a coastal property and therefore alleged a particularized injury in its capacity as a landowner) (internal citation omitted). "Only one of the petitioners needs to have standing to permit us to consider the petition for review." *Id*. at 518 (citing *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52, n. 2 (2006)); *accord Bowsher*, 478 U.S. at 721. "Once it is determined that a plaintiff has standing, and the position of the other plaintiffs is virtually the same as the one with standing, the court may proceed to the merits of the case." *PSINnet, Inc. v. Chapman*, 108 F. Supp. 2d at 620.